FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2013 JAN 11 PM 4:28

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. SAINT JOSEPH'S HOSPITAL, INC. and ex rel. CANDLER HOSPITAL, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. CV410-096 |
| UNITED DISTRIBUTORS, INC., UNITED DISTRIBUTORS, INC. EMPLOYEE HEALTH BENEFIT PLAN, COMMERCE BENEFITS GROUP, INC., d/b/a Commerce Benefits Group, THOMAS J. PATTON, and LINNIE P. REAVES, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## O R D E R

Before the Court are Defendants' Motions to Dismiss. (Docs. 38, 39.)  After careful consideration, Defendants' motions are **GRANTED IN PART** and **DENIED IN PART**. Defendants' motions are granted as to Counts Three, Four, and Five only.  The Government shall have fourteen days to submit an amended complaint correcting the deficiencies identified in this order.  The Government is on **NOTICE** that failure to do so will result in dismissal of Counts Three, Four, and Five.  Defendants' motions as to Counts One and Two are **DENIED**.

## BACKGROUND

This case involves claims brought by the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729, and common law theories of unjust enrichment and payment by mistake of fact.[1] Plaintiffs are two Savannah-area hospitals—Saint Joseph's Hospital, Inc. ("St. Joseph's") and Candler Hospital, Inc. ("Candler")—and are also Relators in this qui tam action, in which the Government has intervened and filed a complaint.[2]

Beginning in November 2001, W.A.[3] worked as a truck driver for Defendant United Distributors, Inc. ("United") and received primary health insurance through United Distributors' health plan—United Distributors, Inc. Employee Health Benefit Plan ("United Health Plan"). (Doc. 19 ¶ 23.) While at work on March 12, 2008, W.A. lost consciousness, fell, and injured his head. (Id. ¶ 24.)

---

[1] For the purposes of the motions to dismiss, the Government's allegations set forth in its complaint will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

[2] Previously, this Court dismissed St. Joseph and Candler's complaint alleging non-FCA violations of ERISA (Doc. 114) after the parties filed a stipulated dismissal as to those claims (Doc. 112). Because those claims have been resolved and only the FCA claims remain, the Court will refer to the United States' complaint (Doc. 19) as the complaint.

[3] The parties have requested that for the purposes of confidentiality, the Court only refer to United's employee by his initials, W.A. The Court will refer to W.A.'s wife as Mrs. A.

After being taken to the emergency room at Candler, W.A. was transferred to St. Joseph's for diagnosis and, ultimately, brain surgery to remove a subdural hematoma. (Id. ¶¶ 24, 25.) Following the surgery, W.A. began to complain of stomach pain. W.A's physicians determined he was suffering from an unrelated colon rupture, for which he underwent another surgery. (Id. ¶ 27.) Unfortunately, a widespread infection was detected shortly after the colon surgery and W.A.'s condition deteriorated rapidly. (Id. ¶ 28.) By the end of March 2008, W.A. became unconscious and fell into a coma. Two months later on May 27, 2008, W.A. died. (Id. ¶ 29.)

The Government alleges that, upon his initial hospitalization, W.A. provided documentation to both Candler and St. Joseph's that his primary health insurance coverage was provided by the United Health Plan. (Id. ¶ 30.) W.A. executed an assignment of benefits form authorizing Candler and St. Joseph's to seek and receive payments directly from the United Health Plan. Nowhere on these forms, however, was there an indication that the primary health insurance coverage was through Medicare.[4] (Id. ¶ 31.)

---

[4] Medicare is a program administered by the Center for Medicare and Medicaid Services. Under Medicare, individuals

Defendant United initiated claims to determine whether W.A.'s medical care would be covered through a workman's compensation program. (Id. ¶ 33.) After the workman's compensation claims were denied (id. ¶ 34), Defendant Thomas J. Patton ("Patton")—President of Defendant Commerce Benefits Group Agency, Inc. ("Commerce Benefits"), the third-party administrator of the United Health Plan—spoke with Defendant Linnie P. Reaves ("Reaves")—United's human resources director—about payment policies for the medical bills. (Id. ¶¶ 35, 36.) On April 4, 2008, Patton called Mrs. A to inform her of how the medical expenses would be reimbursed. (Id. ¶ 37.) In a letter to Mrs. A dated April 4, 2008, Patton wrote that

> [i]t was a pleasure to speak with you, via phone, today. After our call, I spoke with [Reaves] and explained that you and I agreed that the best manner to handle the Workers' Compensation denial is to have you submit all claims through the Medical Plan. In the Unistan Health Plan System we show [W.A.]'s last day on the job as his COBRA effective date, because he chose not to take Family Medical Leave Act. Therefore, all claims will go first to Medicare and then to the Unistan Health Plan. [Mrs. A], the important point is that you will not pay anything for any medical services.

(Doc. 19, Ex. 1 at 2.) Patton then sent an email to Reaves with a copy of the letter and a message indicating that

---

who are age 65 or older, or disabled, may enroll in Medicare to obtain health benefits in return for payments of monthly premiums. 42 U.S.C. §§ 1395j, 1395o, 1395r.

"[t]his worked out quite well, as [W.A.] is over 65 and United will only have to pay the balance of what Medicare does not cover." (Doc. 19, Ex. 2 at 2.) According to the Government, after receipt of the letter, Reaves did not notify anyone of Mrs. A's COBRA[5] election or notify United's COBRA administrator that a qualifying event had occurred. (Doc. 19 ¶ 40.) No COBRA election forms were ever signed or executed. (Id. ¶ 42.) In fact, on May 14, 2008, Reaves completed and certified an employment verification form for W.A. that indicated his health benefits were covered by the United Health Plan and, notably, the COBRA coverage box was not selected. (Id. ¶¶ 46, 47.)

W.A.'s medical expenses totaled $1,335,458.88. (Doc. 19, Ex. 4 at 1-2.) On May 28, 2008, the day after W.A. died, Commerce, at the direction of Patton, informed St. Joseph's for the first time that the United Health Plan

---

[5] The Consolidated Omnibus Budget Reconciliation Act ("COBRA") provides employees, retirees, spouses, and dependents the right to elect temporary continuation of health coverage at group rates when coverage is lost due to certain qualifying life events. 29 U.S.C. §§ 1161-63. COBRA also outlines how employees and family members may elect continuation coverage, in which case the group health plan and Medicare are switched—Medicare would serve as the primary health insurance and the group health plan would serve as secondary coverage. 29 U.S.C. § 1166; 48 C.F.R. § 1652.204-71; 42 C.F.R. § 411.175(a). Prior to any election and at the time a qualifying life event occurs, employers are required to provide notice to employees or family members of how and when such continuation coverage is available. 29 U.S.C. § 1166.

would not be serving as primary payer because W.A. had elected COBRA coverage. (Doc. 19 ¶ 50.) Reaves stated that Commerce had the required COBRA paperwork and Commerce advised St. Joseph's that W.A or Mrs. A had signed a COBRA election form and that all bills should be processed through Medicare as primary payer. (Id. ¶¶ 51, 52.)

Medicare paid Candler $556.46 and St. Joseph's $318,423.97. (Id. ¶¶ 54, 55.) Additionally, Commerce instructed physicians to submit claims to Medicare as primary payer. Nearly two hundred claims for various physicians services were submitted to Medicare, for which Medicare paid $22,821.66. (Id. ¶ 58.) The total amount paid by Medicare was $341,802.09. (Id. ¶ 59.)

The United States brought this suit to recover monies paid for alleged false claims presented to the Medicare program. The Government's complaint asserts five causes of action: Count One alleges violations of the FCA under 31 U.S.C. § 3729(a)(1); Count Two alleges violations of the FCA under 31 U.S.C. § 3729(a)(2); Count Three alleges violations of the FCA under 31 U.S.C. § 3729(a)(3); Count Four presents a claim for unjust enrichment; and Count Five alleges payment by mistake of fact. Defendants Commerce and Patton have moved to dismiss on the grounds that the complaint fails to state a claim upon which relief can be

granted because the claims to Medicare were not false as a matter of law and the complaint fails to plead FCA violations with particularity as required by Fed. R. Civ. P. 9(b). (Doc. 38 at 4.) Defendants United, United Health Plan, and Reaves ("United Defendants") have also moved to dismiss, arguing that the complaint fails to identify specific acts that caused the submission of false claims or a conspiracy to defraud Medicare and that the claims submitted to Medicare were not false as a matter of law. (Doc. 39. at 2-3.) The Government has responded in opposition to both motions, arguing that it has pled with sufficient particularity the necessary elements for a cause of action and has stated claims upon which relief can be granted. (Doc. 49 at 7-8.)

**ANALYSIS**

I.  RULE 9(B) PARTICULARITY STANDARD

The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to causes of actions brought under the FCA. Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009). Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A complaint

alleging fraud must provide the defendant with "enough information to formulate a defense to the charges." United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1313 n.24 (11th Cir. 2002).

An FCA complaint must plead not only the "who, what, where, when, and how of improper practices," but also the "who, what, where, when, and how of fraudulent submissions to the government." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (citation omitted). Rule 9(b) serves to ensure that a FCA claim has "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government." Clausen, 290 F.3d at 1311. Rule 9(b)'s standard "should not be conflated with that used on a summary judgment motion." United States ex rel. Rogers v. Azmat, CV507-092, at 7 (S.D. Ga. May 17, 2011) (unpublished).

The Government's complaint satisfies Rule 9(b)'s requirements. For example, the complaint alleges the who—United, the United Health Plan, Commerce, Patton, and Reaves (Doc. 19 ¶¶ 1, 8-12); the what—false claims for payment from Medicare for hospital and medical services provided to W.A. (id. ¶¶ 34-41); the when—from W.A.'s first hospitalization on or about March 12, 2008 up to February 2009 when the final claims were billed to Medicare (id.

8

¶¶ 24, 50, 54-55, 58-59); the where—Savannah and Smyrna, Georgia and Avon Lake, Ohio (id. ¶¶ 6, 8, 10); and the how—by conspiring to conduct a sham COBRA election for W.A. that would result in Medicare as the primary payer and United as the secondary payer (id. ¶¶ 30-32, 49, 54, 55, 58, 59). Specifically, the Government has alleged that Patton and Reaves presented a sham COBRA election to St. Joseph's and Candler, as well as to other physicians and medical providers. Both Reaves and Patton continued to inform health care providers that W.A. elected COBRA coverage and instructed providers to submit claims to Medicare as primary payer.

The Government has also sufficiently pled the time of the Defendants' fraud—after denial of the workman's compensation claim until February 2009 (Doc. 19 ¶¶ 50, 55-58); the place of the fraud—Savannah and Smyrna, Georgia and Avon Lake, Ohio (id. ¶¶ 4, 8-12, 35-47); the substance of the fraud—providing the specific entities involved (id. ¶¶ 8-12, 35-40, 42, 46, 47, 50-53, 57) and the date and billing information of the alleged false claims that were made and submitted for payment (id. ¶¶ 54, 55, 58, 59); and the details of Defendants' misconduct—that there was no signed COBRA election form by Mrs. A, United and Reaves never notified its COBRA administrator of a qualifying life

event, and a May 2, 2008 employment verification form
completed by Reaves indicated that W.A. was covered by the
United Health Plan (id. ¶¶ 42-47). The complaint alleges
that these false claims ultimately led the Government to
pay money it did not owe. The Government's twenty-page,
eighty-one paragraph complaint provides all of the
necessary indicia of reliability, and provides allegations
sufficiently detailed to satisfy Rule 9(b).

II. RULE 12(B)(6)

    A. Standard

    Federal Rule of Civil Procedure 8(a)(2) requires a
complaint to contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."
"[T]he pleading standard Rule 8 announces does not require
'detailed factual allegations,' but it demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation."
Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[6] "A
pleading that offers labels and conclusions or a formulaic

---

[6] Iqbal makes clear that Twombly has been the controlling
standard on the interpretation of Federal Rule of Civil
Procedure 8 in all cases since it was decided. Iqbal, 556
U.S. at 684 ("Though Twombly determined the sufficiency of
a complaint sounding in antitrust, the decision was based
on our interpretation and application of Rule 8 . . .
[that] in turn governs the pleading standard in all civil
actions and proceedings in the United States district
courts." (internal quotations and citations omitted)).

recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As such, a district court may "insist upon some specificity in [the] pleading before allowing a potentially massive factual controversy to proceed." Id. at 558.

B. **Analysis**

    1. Count One

In Count One, the Government alleges that Defendants violated 31 U.S.C. § 3729(a)(1),[7] which creates liability under the FCA for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." To establish a cause of action, the United States "must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States ex rel. Walker v. R&F Props. of Lake Cnty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). Defendants have moved to dismiss Count One because the complaint does not show how the alleged conduct caused or influenced Medicare's payment as primary insurer. (Doc. 38 at 4, Doc. 39 at 14-17.)

The Government alleges that Defendants "falsely represented to the hospitals and various physicians that W.A. [or Mrs. A on his behalf] elected COBRA and directed

---

[7] The complaint asserts claims under an older version of the FCA, 31 U.S.C. § 3729 (2009). The section has been renumbered and amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4(a), 123 Stat. 1617. However, as to Count One, the former language is identical to the amended language. See 31 U.S.C. § 3729(a)(1)(A).

that all claims for W.A.'s medical care should be processed through Medicare as primary payer" and that the claims were false because "[t]here was never an election of COBRA by either W.A. or Mrs. A." (Doc. 19 ¶ 62.) Second, the Government contends that these false claims were presented to the Medicare program for payment. (Id. ¶¶ 58, 61.) According to the Government, an employee of Commerce, at the direction of Patton, informed St. Joseph's that a COBRA election form had been signed, and instructed the hospital to submit claims to Medicare as primary payer. (Id. ¶¶ 52, 53.) Reaves also informed St. Joseph's of the purported COBRA election and that Commerce had all the necessary documents. (Id. ¶ 51.) Lastly, the complaint adequately provides that Defendants—including United, the United Health Plan, and Reaves—were either deliberately ignorant of the truth or falsity of the information or had actual knowledge of its falsity. See 31 U.S.C. § 3729(b)(1)(A).

Defendants argue that the Government has failed to state a claim because it has not alleged a false claim. (Doc. 38 at 7-8, Doc. 39 at 21-22.) Defendants assert that the claims made to Medicare were not false as a matter of law because the United Health Care Plan denied coverage and, as a result, St. Joseph's and Candler were authorized to present their claims to Medicare. (Doc. 38 at 7, Doc.

21-22.)  Defendants also assert that the claims made to Medicare were not false as a matter of law because Medicare was authorized to pay the claims for W.A's care due to the expectation that the primary payer has not made or would not reasonably be expected to make payment promptly.  (Doc. 39 at 21-22.)  The Court is not persuaded by Defendants' argument because the basis of United Health Plan's coverage denial was based on what the Government alleges was a "fabricated COBRA election."  (Doc. 49 at 28 (citing Doc. 19 ¶¶ 50, 52, 87).)  At this stage in the proceedings, and taking the Government's allegations as true, Sinaltrainal, 579 F.3d at 1260, the Government has satisfied the pleading standard required by Rule 12(b)(6).

The United Defendants argue that under the Medicare Secondary Payer Statute ("MSP"), 42 U.S.C. § 1395y, Medicare should pay for the medical expenses because there was no reasonable expectation of the United Health Plan to pay the claims promptly as a matter of law, thus allowing Medicare to pay the claims pursuant to 42 U.S.C. § 1395y(b)(2)(B)(i).  (Doc. 39 at 22.)  The United Defendants' argument, while novel, would incentivize a group health plan to avoid its legal obligation as the primary payer by simply asserting that a Medicare-eligible employee in need of medical care simply elected COBRA, deny

coverage, and then submit the claims to Medicare. The MSP "makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer." Glover v. Ligget Group, Inc., 459 F.3d 1304, 1306 (11th Cir. 2006) (citing Cochran v. United States Health Care Fin. Admin., 291 F.3d 775, 777 (11th Cir. 2002)). By purportedly fabricating W.A.'s COBRA election, Defendants could deny coverage through the United Health Plan and instead submit these false claims to Medicare. For these reasons, the Government's allegations in Count One state a claim for relief under the FCA.

2. Count Two

Count Two alleges that Defendants violated 31 U.S.C. 3729(a)(2),[8] which imposes liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." United, the United Health Plan, and Reaves move to dismiss on the grounds that they did not cause others to make false statements such that Medicare paid false claims.

_____

[8] Former 31 U.S.C. § 3729(a)(2) was amended by FERA, making it retroactive to all claims pending on or after June 7, 2008, and codifying it at §3729(a)(1)(B). Pub. L. No. 111-21, §4(f)(1), 123 Stat. 1617, 1621. The complaint alleges Medicare claims for W.A. were pending on or after June 7, 2008. Thus, the FERA amendments are controlling as to Count Two.

(Doc. 39 at 14-16.) Considering the well-pleaded facts as true, see Sinaltrainal, 578 F.3d at 1260, the Government's complaint is sufficiently specific and detailed to state a claim for relief.

According to the Government, Reaves' false statements to St. Joseph's and a physician's office that W.A. elected coverage under COBRA directly led to Medicare paying these false claims. (Doc. 19 ¶ 51.) The complaint alleges how Reaves submitted a May 14, 2008 employment verification for W.A. that did not indicate COBRA coverage despite Reaves having communicated with Patton about the COBRA election. (Id. ¶¶ 46, 47.) The Government further contends that Reaves did not initiate any paperwork as part of the COBRA election (id. ¶¶ 42-45) or notify United's COBRA administrator (id. ¶ 44).

The United Defendants assert that they are not liable because any falsity was not material to establish liability. (Doc. 39 at 13-14, 17.) However, under both Eleventh Circuit precedent, see Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1328 (11th Cir. 2009), and the amended language of 31 U.S.C. § 3729(a)(1)(B)—made retroactive to claims pending on June 7, 2008, such as this one— materiality is established where false statements caused the Government to pay amounts it does not owe. Hopper, 588

F.3d at 1328. The amended language defines materiality similarly as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The complaint contends that the false statements were material to the claims submitted to Medicare because the supposed COBRA election transferred primary coverage, and a significant amount of the medical expenses, from the United Health Plan to Medicare. Taken together, these allegations are sufficient to state a claim that Defendants, including Reaves and her employer United, acted with the necessary knowledge to make, use, or cause to be made or used a false record material to a false or fraudulent claim. As a result, this count is not subject to dismissal under Rule 12(b)(6).

3. Count Three

Count Three alleges that Defendants violated the FCA by "enter[ing] into a conspiracy among themselves to defraud the United States by getting false claims paid." (Doc. 19 ¶ 71.) According to the Government, Reaves and Patton conspired to have the United Health Plan avoid paying the majority of W.A's medical expenses by falsely asserting that W.A. or Mrs. A had elected COBRA coverage. (Id. ¶ 72.) A conspiracy claim under the FCA must allege a factual basis to show

> (1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim

Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (citation omitted).    In  fraud  cases  involving multiple defendants, the Eleventh Circuit has held that the complaint " 'should inform each defendant of the nature of his alleged participation in the fraud.' " Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1317 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 2007)).

The  Government  alleges  that  after  learning  of  the denial of workman's compensation, Reaves contacted Patton about a concern over the United Health Plan having to pay a large amount for W.A.'s medical care.   (Doc. 19 ¶¶ 33, 35.) However, nothing in the complaint specifically alleges that this  conversation  involved  conspiring  to  change  W.A.'s primary coverage to COBRA.   Simply, the Government must provide  factual  allegations  concerning  statements  or specific conduct made as part of the conspiracy.   The Government has failed to do so, and thus dismissal as to Count Three is warranted.

However, the Government has requested leave to amend its complaint upon the finding of any deficiency. (Doc. 49 at 31.) In light of this request and the facts of this case, the Government's request is granted. The Government shall have fourteen days to submit an amended complaint correcting the deficiencies as to Count Three.[9]

### 4. Counts Four and Five

In Counts Four and Five, the Government alleges that Defendants have been unjustly enriched by their actions with respect to W.A.'s sham COBRA election (Doc. 19 ¶¶ 74-77) and that the Government made payments by mistake of fact (id. ¶¶ 78-81). The United Defendants have moved to dismiss these for failure to state a claim. (Doc. 39 at 22-24.) In response, the Government argues that it has stated a claim under Georgia law. (Doc. 49 at 30-31.) The United Defendants' reply indicates that "for the first time [the Government has indicated] that these are Georgia common law causes of action, rather than federal common law claims." (Doc. 59 at 16.)

---

[9] Both parties should also be aware that the Court will not accept any filing—whether an amended complaint, an answer, motion, brief, response, or reply—that incorporates by reference any factual allegation or argument contained in any documents already filed before this Court. Any further filings must be stand-alone that independently contain all the factual allegations and arguments that the filing party wishes the Court to consider.

Because it is unclear from the complaint whether the Government's claims of unjust enrichment and payment by mistake were pled under federal common or Georgia state law, the United Defendants' motion to dismiss as to Counts Four and Five are granted. However, the Government's request for leave to amend its complaint is granted. The Government shall have fourteen days to submit an amended complaint that specifically refers to whether the cause of action for unjust enrichment and mistake of fact are based on federal common law or Georgia state law.[10]

---

[10] The Court notes, however, that this case is atypical from a more conventional FCA case where the Government also alleges unjust enrichment and payment by mistake of fact. In many cases, for example, there are express contracts between the Government and a party that precludes alternative theories of recovery other than the FCA. See United States v. First Choice Armor & Equip., Inc., 808 F. Supp. 2d 68, 78 (D.D.C. 2011). In others, under federal common law claims, the benefits conferred exist because the Government had a reasonable expectation to be paid by the defendant and the defendant should reasonably have been expected to pay the Government. United States v. Rogan, 429 F. Supp. 2d 692, 728 (N.D. Ill. 2006) aff'd, 517 F.3d 449 (7th Cir. 2008). Even under Georgia state law, unjust enrichment is premised upon the notion that a party cannot "induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." Morris v. Britt, 275 Ga. App. 293, 294, 620 S.E. 2d 422, 424 (2005) (citations omitted). Here, while the Government contends the Defendants were unjustly enriched by decreasing their monetary payment obligations as to the medical expenses, under either federal common law or Georgia state law, simply because the Defendants supposedly avoided payment of their obligations does not mean that a benefit from the Government was otherwise conferred upon them. In other words, the Defendants did

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**. Defendants' motions are granted as to Counts Three, Four, and Five only. The Government shall have fourteen days to submit an amended complaint correcting the deficiencies identified in this order. The Government is on **NOTICE** that failure to do so will result in dismissal of Counts Three, Four, and Five. Defendants' motions as to Counts One and Two are **DENIED**.

SO ORDERED this $11^{\underline{th}}$ day of January 2013.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

not receive something of value rendered by the Government with the change in primary or secondary payer designation for which they ought to have compensated the Government. In short, any claim for unjust enrichment in this case is doubtful because there was nothing Defendants could provide to the Government in exchange for secondary payer designation. Thus, while the Court will allow the Government an opportunity to amend its complaint as to unjust enrichment and payment by mistake, it expresses hesitation that a valid unjust enrichment claim could, in fact, even exist.